# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. '23 MJ2791
A purple Apple iPhone with an unknown associated )
telephone number and having a T-Mobile SIM Card with )
numbers "8901260444748921323" and "60.70 R15 -T-" )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the  Southern District  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, U.S.C., Sec. 841(a)(1); 18, U.S.C., Sec. 924(c)(1)(A); and 18, U.S.C., Sec. 922(g)(1) | Possession of Methamphetamine and Fentanyl with Intent to Distribute, Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Felon in Possession of Ammunition |

The application is based on these facts:
See affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

MICHAEL WASSER, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone**.

Date: 08/02/2023

*Judge's signature*

City and state: San Diego, CA      MICHELLE M. PETTIT, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 21, United States Code, Section 841(a)(1) is a purple Apple iPhone cellular phone with an unknown associated telephone number, contained within a red and black protective case, having a T-Mobile SIM Card with numbers "8901260444748921323" and "60.70 R15 -T-" on it and held in evidence as Exhibit N-1 under DEA case number R2-22-0154 ("**Target Device 1**").



The **Target Device 1** is currently in the possession of the Drug Enforcement Administration (DEA) as evidence and being held at the DEA San Diego Field Division.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below. The seizure and search of the Target Devices shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the Target Devices will be electronic records, contact lists, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 1, 2022, to May 19, 2022:

- a. tending to identify attempts to possess methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

- b. tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

- c. tending to identify co-conspirators, criminal associates, or others involved in the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

- d. tending to identify travel to or presence at locations involved in the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Section 841 – Possession of Controlled Substances with Intent to Distribute, Title 18, United States Code, Section 924(c)(1)(A) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Title 18, United States Code, Section 922(g)(1) – Felon in Possession of Firearms and Ammunition.

<u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT</u>

I, Special Agent Michael Wasser, being duly sworn, hereby state as follows:

I

<u>INTRODUCTION</u>

1. This affidavit supports an application for a warrant to search the following items described in Attachments A-1 and A-2 (incorporated herein);

    a. A purple Apple iPhone cellular phone with an unknown associated telephone number, contained within a red and black protective case, having a T-Mobile SIM Card with numbers "8901260444748921323" and "60.70 R15 -T-" on it and held in evidence as Exhibit N-1 under DEA case number R2-22-0154 (**Target Device 1**); and

    b. A black Nokia, Model: N139DL, flip-style cellular phone with an unknown associated telephone number (IMEI: 358712910487493) and held in evidence as Exhibit N-2 under DEA case number R2-22-0154 (**Target Device 2**)(Collectively **Target Devices**).

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section 841 – Possession of Controlled Substances with Intent to Distribute, Title 18, United States Code, Section 924(c)(1)(A) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Title 18, United States Code, Section 922(g)(1) – Felon in Possession of Firearms and Ammunition. This search supports an investigation of Tristan William TOMLIN (TOMLIN or Defendant) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Devices** were seized from TOMLIN on May 19, 2022, by investigators from El Cajon Police Department, during the execution of a state search warrant at his apartment, in which he was found to be in possession of a loaded semi-automatic handgun in his waistband and

distributable quantities of methamphetamine and fentanyl and indicia of sales, including unused clear plastic baggies and a functioning digital scale, from inside a black backpack in the back seat of the vehicle he had been contacted in as the sole occupant. A subsequent search of TOMLIN's apartment resulted in the discovery and seizure of additional distributable quantities of fentanyl, four more firearms and an assortment of ammunition. The **Target Devices** are currently stored as evidence at the Drug Enforcement Administration (DEA) San Diego Field Division.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B incorporated herein.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my direct participation and observations in this investigation, having reviewed reports prepared by other law enforcement agents and officers and other evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish requisite probable cause.

II

AFFIANT'S EXPERIENCE AND TRAINING

5. I am a Special Agent (SA) Criminal Investigator for the United States (U.S.) Drug Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the U.S. within the meaning of Section 2510(7) of Title 18 of the U.S. Code. I am empowered by law to conduct investigations and to make arrests for felony offenses. I was hired by the DEA in August of 2004, and I attended the DEA Academy for approximately sixteen (16) weeks. At the DEA Academy, I was trained in the various aspects of conducting narcotics investigations.

6.  In December 2004, I was sworn as a DEA Special Agent (SA) and since then I have been involved in over 200 narcotics investigations and have affected over 200 arrests for violations of the California Health & Safety (H&S) Code and Title 21 of the U.S. Code. These investigations and arrests involved: (1) unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics; (2) the laundering of narcotics proceeds, and monetary instruments derived from narcotics activities; and (3) conspiracies associated with narcotics related offenses. These investigations have involved debriefing defendants, witnesses and informants, conducting surveillance, assisting in court ordered interceptions, executing search warrants, seizing narcotics and narcotics-related assets and making arrests for narcotics-related offenses.

7.  In addition, in December 2011, I attended and completed DEA Advanced Agent Training and in June 2018, I graduated from the DEA Field Training Agent program, certifying me to oversee the training and development of DEA SAs who graduate from the DEA Academy and are on a probationary status pending completion of their field training program.

8.  I am currently assigned to DEA San Diego Field Division (SDFD), San Diego County Integrated Narcotics Task Force (NTF) Team 8, at the San Diego International Airport (SDIA), and except for an approximately six-month period of time during which I was the Acting Group Supervisor for NTF Team 10, an overdose investigations team, have been so assigned since March 2021. NTF Team 8 is comprised of DEA SAs, Task Force Agents (TFAs) from the United States (U.S.) Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and Task Force Officers (TFOs) who are Detectives (federally cross sworn TFOs) from the San Diego Police Department (SDPD), San Diego County Sheriff's Department (SDSD) and Harbor Police Department (HPD), who primarily investigate illegal drug trafficking organizations operating in the U.S., and internationally, including those organizations whose operations involve the distribution of wholesale and retail quantities of cocaine, methamphetamine, marijuana, heroin, fentanyl and their derivatives in and around the San Diego, California area. NTF Team 8 is also responsible for the interdiction of drugs and drug

proceeds being trafficked through SDIA as well as through local bus and train stations.

9. Based on my training and experience, I am aware drug traffickers use cell phones and other electronic devices in connection with their illicit activity. For example, drug traffickers use cell phones and other electronic devices to set up meetings with co-conspirators, to obtain supplies of drugs from suppliers, maintain records of illicit transactions, and to provide communication necessary for distribution quantities to sub-distributors and retail quantities to end-user customers. As examples, those devices can store locations including residences used as stash houses or homes of co-conspirators and the target of investigation, storage lockers where supplies and related illicit items (such as firearms and cash proceeds) are kept, banks and ATM machines where illicit money-movement activity can occur, and public parking lots where drug deals often happen.

10. Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals involved in the manufacturing and distribution of controlled substances to work in concert with other individuals and to do so by utilizing cellular telephones and other portable communication devices to maintain communications with co-conspirators in order to further their illicit criminal activities.  I am also aware that it is a common practice for individuals involved in the manufacturing and distribution of controlled substances to communicate with buyers regarding arrangements and payments utilizing cellular telephones. Based on my training and experience, I am aware that conspiracies involving the manufacture and distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements and payment, names, photographs, text messages, and phone numbers of co-conspirators.

11. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug trafficking and controlled substance manufacture and distribution investigations, and the opinions stated below are shared by them. Further, I have been

personally involved in the investigation that is the subject of this Affidavit and I am familiar with the facts outlined below, or I have read the reports of investigation prepared by persons mentioned in this Affidavit. Among other things, my knowledge comes from my personal analysis of the reports submitted by other law-enforcement officers participating in this investigation as well as having spoken directly to the primary investigating detective.

12. Based upon my training and experience as a DEA SA, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with illegal narcotic trafficking, controlled substance manufacture and distribution, and money laundering investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

    a. Narcotics traffickers will use cellular/mobile telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages.

    b. Narcotics traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Narcotics traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Narcotics traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Narcotics traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Narcotics traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or narcotics proceeds.

  g. The use of cellular/mobile telephones by conspirators or narcotics traffickers tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

13. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a trafficker's use of a cellular/mobile telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

14. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this affidavit, I have learned cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience, I have learned that searches of cellular/mobile telephones associated with narcotics investigations yield evidence:

  a. tending to identify attempts to possess methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

  b. tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses,

and phone numbers – used to facilitate the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States;

d. tending to identify travel to or presence at locations involved in the possession of methamphetamine, fentanyl or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

III

STATEMENT OF PROBABLE CAUSE

15. This affidavit supports an application for a warrant authorizing the search of the **Target Devices**, utilized by TOMLIN.

Based on the information below, I have probable cause to believe that the requested information will lead to evidence of: a crime; specifically, violations of Title 21, United States Code, Sections 841 and 846, Title 18, United States Code, Sections 924(c)(1)(A) and 922(g)(1), as well as to the identification of additional individuals who are engaged in the commission of these offenses.

*Introduction and Investigative Background*

16. On May 17, 2022, San Diego County Superior Court Judge David Berry signed search warrant #2205170922-ECPD-DLB-SW, authorizing the seizure and search of Tristan William TOMLIN, his grey Honda Accord (CA/8SBV242),

his apartment at 6306 Rancho Mission Road, #282, San Diego, California, and two storage units, one located at 4437 Twain Avenue, #D-41, San Diego, California, and the other at 12410 Lakeside Avenue, #3097, Lakeside, California, both of which he was the sole renter.

17. On May 19, 2022, ECPD Detectives, along with members from the United States Marshals Service (USMS), established a surveillance in the vicinity of 6306 Rancho Mission Road, in anticipation of executing the aforementioned search warrant. While doing so, at approximately 3:30 p.m., Detectives contacted and detained TOMLIN in the parking lot at 6306 Rancho Mission Road, after he was observed unlocking his vehicle, opening the driver's door and taking a seat in the driver's seat.

18. During a search of TOMLIN's person, ECPD Detectives located a loaded, .45 caliber semi-automatic handgun in the front of TOMLIN's waistband, following which he was placed under arrest for felony violation of California Penal Code (PC) section 29800 - felon in possession of a firearm. This handgun had a round in its firing chamber and a loaded magazine with six rounds of ammunition inserted into its magazine well and was readily accessible to TOMLIN. Also found on TOMLIN's person were several key rings, each of which held multiple barrel style keys, a wallet with $399 U.S. Currency in it, and two cellular phones. Specifically, ECPD Detective Peterson located a purple Apple iPhone cellular phone with an unknown associated telephone number, contained within a red and black protective case, and having a T-Mobile SIM Card with numbers "8901260444748921323" and "60.70 R15 -T-" on it (**Target Device 1**) and a black Nokia, Model: N139DL, flip-style cellular phone with an unknown associated telephone number (IMEI: 358712910487493) (**Target Device 2**) inside TOMLIN's front left shorts pocket.

19. During a subsequent search of TOMLIN's vehicle, ECPD Detectives located a black backpack in the back seat, in and from which they discovered and seized a black plastic magnetic case, which was found to contain two plastic bags, one containing a white crystalline substance that has since been analyzed by the DEA's Southwest Regional Laboratory (SWRL) and found to be approximately 73 grams of methamphetamine (+/- 5 grams; amount of pure substance), and the other containing a white powdery substance which

was determined by the DEA SWRL to be approximately 11.028 net grams (+/- 0.002 grams) of (N-(4-Fluorophenyl)-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide) (p-Fluorofentanyl) and N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide (Fentanyl). In this same backpack, ECPD Detectives found multiple unused clear plastic baggies (suspected packaging materials) and a functioning digital scale, indicative of drug sales. TOMLIN was thereafter transported to the ECPD for processing.

20. Furthermore, ECPD Detectives continued service of the search warrant by making unforced entry into the apartment where TOMLIN resided, utilizing a numeric code which TOMLIN provided to them, and later the two previously mentioned storage units. At the time of their entry, ECPD Detectives encountered no other subjects inside the apartment. An ensuing search of the two-bedroom apartment revealed that TOMLIN resided, and maintained much of his personal property, in the master bedroom, which was closed but unlocked during their entry.

21. Notably, in the master bedroom, ECPD Detectives located four additional firearms, including a loaded, unserialized AR-15 style rifle, with a magazine containing 14, .223 caliber rounds of ammunition inserted into the magazine well of the weapon, two loaded, unserialized .45 caliber semi-automatic handguns and one loaded, unserialized 9mm semi-automatic handgun. The two .45 caliber semi-automatic handguns had loaded magazines inserted into their magazine well and a round in their firing chambers. The 9mm semi-automatic handgun had a loaded magazine in its magazine well and a paint (simulation) round inserted in its firing chamber. In addition, materials consistent with manufacturing firearms, such as a rifle upper, an AR-15 lower in a jig, and miscellaneous firearms components such as slides and barrels, were found in the master bedroom.

22. Moreover, under the bed in TOMLIN's master bedroom, ECPD Detectives located a black backpack, which was found to contain a large quantity of a substance in brick form, a plastic vacuum seal bag containing a large amount of a white substance, and six containers of suspected counterfeit Xanax (Alprazolam) pills, numbering in the several thousands. The substances contained within brick form and in the plastic vacuum seal bag were also analyzed by the DEA SWRL and confirmed to be Fentanyl and

p-Fluorofentanyl with Fentanyl and weighed approximately 1,000 net grams (+/- 1 gram) and 503 net grams (+/- 1 gram), respectively. Additionally, packaging materials such as vacuum seal bags and a sealer, a money counter, "pay and owe" documentation (suspected drug ledger), four additional digital scales and what was subsequently determined to be approximately $30,822 in suspected illicit drug proceeds were seized. ECPD Detectives also located numerous documents belonging to TOMLIN throughout the room demonstrating his dominion within and control over the room. ECPD detectives also noted there were also multiple areas in the room where "SDSH" was written in red, indicative of affiliation with the San Diego Skinheads, a known criminal street gang.

23.  Since that time, on June 22, 2022, a criminal complaint, charging TOMLIN with felony violations of Title 21, U.S.C., § 841(a)(1) – Possession of Methamphetamine with Intent to Distribute; Title 21, U.S.C., § 841(a)(1) - Possession of Fentanyl with Intent to Distribute; Title 18, U.S.C., § 924(c)(1)(A) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Title 18, U.S.C., § 922(g)(1) – Felon in Possession of Ammunition ('22MJ02276), was signed by U.S. Magistrate Judge Bernard G. Skomal. TOMLIN is currently being prosecuted by the U.S. Attorney's Office in case number 22CR1712-RBM.

V

METHODOLOGY

24.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if

possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25.     Following the issuance of the warrants, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to the warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

VI

CONCLUSION

27.     Based on all of the facts and circumstances described above, there is probable cause to conclude that TOMLIN used the **Target Devices** to facilitate violations of Title 21, United States Code, Section(s) 841 and Title 18, U.S.C., Sections 924(c)(1)(A) and 922(g)(1).

28.     Because the **Target Devices** were promptly seized during the investigation of TOMLIN's distribution activities and has since been securely

stored, there is probable cause to believe that evidence of illegal activities committed by TOMLIN continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from March 1, 2022 through May 19, 2022.

29. WHEREFORE, I request the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachment B, using the methodology described above.

I declare under penalty of perjury that the foregoing is true and correct.

_____
MICHAEL WASSER, Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 2nd day of August 2023.

_____
MICHELLE M. PETTIT
United States Magistrate Judge